May it please the Court. Good morning, Your Honors. My name is Ethan Ballow, and this morning I speak for appellant and cross appellee Michael Lindsay. I'll watch my own clock. My action plan is to begin with the Foreign Commerce Clause issue. I'm going to move then to exclusion of the Rastin-Hernandez testimony and texts. I'm obviously available to answer all questions on any of the issues, but I would hope to do at about, I'm going to try to save two minutes of rebuttal at about the 11-minute mark. I'm going to pivot wherever I am to the sentencing appeal by the United States to make sure I cover that as well, and we'll see how we go. Very good. When you're dealing with this first issue, you understand, I guess, that we have the United States v. Pepe, which was argued and submitted about that same issue on February the 8th of 2017? I am from Pepe. I think Pepe, the issue, as these statutes have been amended, 2423 has recently been amended, and some of the litigation is working its way through the courts, including this circuit. I think the principal issue in Pepe is whether or not the defendant had relocated abroad, and because whether he relocated abroad, whether that provides defense under Jackson, and also as the statute has been re-amended. So our non-commercial prong issue, I think, is a little different, but to the extent that it is covered by Pepe, we would agree that this case would be controlled by Pepe, and submission would hold until Pepe is decided as the first-in-time brief. And then we also had U.S. v. Abramoff, which has been done lately, and that was also addressed the same issue. They held argument and withdrew submission, waiting on Pepe. That is correct, Your Honor. I just came to that. What we did is we thought we'd hear argument, but we ought to wait for Pepe, too. I think that's a sensible decision. Pepe has been pending for some time. It is a little different, though, but we are happy to wait. I'll get right to the Commerce Clause issue. You know, we are a country of Congress, a Constitution of enumerated powers, and with respect to the extraterritorial reach of criminal law, the statute issue that would give Congress authority in this venue is the and its decision in Clark really compels the conclusion that the non-commercial prong is insufficient. Clark addressed the commercial prong and made a finding, said there's two critical aspects of 2423C, the commercial prong, which would permit, makes it fall within Congress's reach, and that is, one, the travel interstate commerce, and then it called that combination with extraterritorial commercial conduct, and it said the essential character, excuse me. One of the things that bothers me about the case is we have cases say we can look at our National Commerce Clause issue in determining the international aspect. If one grain of wheat makes it in a commercial case in interstate conference, it's pretty sweeping of what we should go with the international commerce, and I'm just wondering if you've given some thought to that. If, in fact, were to look to the national cases on the Commerce Clause, they just don't seem to be a closing door. Well, I think there's two things. I think that's a very good question, Judge Wallace. One, I think that's part of the debate that's going on right now amongst the Circuit Courts of Appeals. This is Al Maliki in the Sixth Circuit, which we've cited. It's Pendleton and Bollinger. It's one, how much is the Foreign Commerce Clause analysis governed by either what we'd call a traditional Commerce Clause analysis or the updated Commerce Clause analysis that came down between Lopez and Morrison when the Rehnquist Court struck down serially a number of enactments by Congress. And Clark, in this case, in the government's argument, says that we don't adopt the trilogy, the Lopez-Morrison trilogy of cases, when we apply sort of the three aspects of foreign commerce within the Interstate Commerce Clause. And what Clark gave us is a sort of a ramp through how to apply it in a statute, and that's why we think Clark controls. But I would respect it this way, though, I think it sweeps broadly, and the Court is correct, Your Honor is correct to notice that, even on the Interstate Commerce Clause, there are limitations. And I think what Clark did was he looked at the three avenues, Interstate Commerce Clause, Indian Commerce Clause, and Foreign Commerce Clause, before settling on the rule which applied to this case, which would say that Congress does not have the authority to regulate non-commercial extraterritorial conduct. And if that's such a finding is made, we would prevail on counts two and three, the 2423C counts on a non-commercial basis. But even if we took your Court's question to its conclusion, even then, Morris and Lopez showed there has to be a connection with foreign commerce. And here, the exact conduct that he was charged with, one of the problems was it was non-commercial in full, that if you went and you went on a date with a 17-year-old and you had bought her a bathing suit, that's commercial sex, no quid pro quo, that that would be within the ambit of Congress's authority. And that's the issue. So, giving money to the mother for the sex, that makes it a little more commercial. Absolutely. But the primary writer of this is Leary. They charged both prongs. So, it's not going to be a fair criticism today to say, we can throw away your challenge to the non-commercial challenge because they also had a commercial conduct challenge. What Leary says is, if two theories go to a jury, and we don't know which one the jury accepted, and one of them is constitutionally untenable, it's a plenary reversal. And so, the government opted to pursue a non-commercial theory. They pursued it. They also pursued a commercial theory. Mr. Lindsay defended against both. So, but if that theory is untenable, and we think Judge Ferguson has the better argument in Clark, we think the Sixth Circuit Al-Maliki says, clearly, non-commercial conduct is outside the reach. We would prevail on that foreign commercial clause challenge. Let me, let me back up just a little. Yes, Your Honor. It seems to me that you, in fact, concede the plenary power argument, right? No. I think what, with those cases where it's like King and walks out, there's... Well, it didn't seem to me that you made much of an argument about it, at best. It seemed to me that you went right to this foreign commerce clause argument. Well, I think we have to identify, for every reach of Congress, that you have to identify where the power comes from. And there is no... I understand that. There is no plenary, I would respectfully disagree, there's plenary authority for to legislate in this area. The plenary powers, Your Honor, I think is referring to, is what Clark discusses, as the five tenets of international law which provide a sovereign authority over its citizens, as a general notion. And there are cases like King, which is the, it's, if the District Court of, District of Columbia issues a subpoena, and someone leaves in Paris, they can enforce the subpoena against the American domiciled in Paris. And for the cases like the international drug change on the high seas, there's never been a challenge, that's outside of Congress's authority, and those are two of the cases. But I would respectfully disagree that there's any case, Supreme Court or this Court, which recognizes plenary authority, and there's a provision that Congress gives plenary authority to prescribe extraterritorial conduct. So can we throw out this case on the plenary power argument? I don't believe you can. Oh, can you throw it out? I don't, I don't, I don't think there's any plenary authority here that's been established. I think the five pieces are, you look at Clark, it's. But you don't answer my question. Can I end it if I just don't think there's any plenary power here? Yes. I think you have to look at the Foreign Commerce Clause, though, because that's a specific provision which, which gives Congress authority to legislate in an area, and I think you'd have to reach that argument. I mean, the Foreign Commerce Clause, I've heard your argument now, I know what you're saying. It seems to me that Clark says we must act, ask whether the statute bears a rational relationship to Congress's authority under the Foreign Commerce Clause. Would you agree? Yes. So if that's the question that I'm asking, then the evidence is this crime was dependent on the channels and instrumentalities of foreign, foreign commerce. Your client was a person in foreign commerce. He resided in the United States. He frequently traveled between the United States and the Philippines. He communicated between the United States and the Philippine individuals and wired them money. And he arranged to meet with SQ in August of 2012 through messages exchanged and with her mother over the internet. Why is that not a rational relationship? Well, because the ultimate holding in Clark is, quote, Section 22, 2423C's combination of requiring travel in foreign commerce coupled with engagement in a commercial transaction while abroad implicates foreign commerce to a constitutionally adequate degree. And it's that decoupling of the second prong with the, which the non-commercial prong doesn't reach. It reaches, just like non-commercial sexual conduct. If I could, I would just take one minute. Just the other issue I really want the Court to take a close look at. Obviously, I'm blessed with three jurists who have been district court judges. Judge Batchew still sits on the district judge, district bench. Judge Breyer made clear error when he found this was a discovery violation. Right before arrest, Dean Hernandez took the stand. They were trying to prove up an extortion plot. He told defense counsel he possessed information in his phone, which would corroborate that defense. Judge Breyer's true response, he declared it a discovery violation, which was incorrect. Defense counsel never had possession, custody, or control of the Sina Quanon of a Rule 16 obligation. And two, even if there was an obligation to turn it over right before the testimony under Aceves Montes and Taylor v. United States and Duran, that was an abuse of discretion. Do you think any of those cases? What's that? Do you think any of the cases you've just cited suggest that the district court's discretionary decision as it relates to this discovery issue is an abuse? Yes, I think those cases... I couldn't find... I read those cases. I cannot find anything in any one of those cases which would suggest that the district court was required to do certain things. In fact, just the opposite. If I read those cases, they would suggest the district court has pretty wide authority, and when the district court makes a decision one way or the other, that I should not get involved because it would be... Because there's no abuse. And if I read your cases, to be fair, I don't find it anywhere any different. Okay. Well, let me tell you what I'm relying on. Aceves-Ravalli says you cannot have any exclusion of evidence that's disproportionate to the violation, and under Taylor v. United States, the Supreme Court case... I've got to get to disproportionate to the violation? Yes. And you also, worse, I think the government, under Taylor v. United States, exclusion requires a finding of willful misconduct with the intent to obtain tactical advantage by defense counsel. And that's applied by this Court in Duran. But there's nothing on this record that suggests that defense counsel did anything wrong, much less committed willful misconduct. Before I run out of time, my counsel, I think what they've really done on the sentencing issue, sort of their cerebral... Their fourth brief on cross-appeal ultimately shows why it's a winner for us. Their chief real complaint is that they urged Judge Breyer to group these as separate groups. The PSR grouped them that way. They stood up at oral argument in sentencing and said, we urge you to adopt those findings, two separate groups. They put it in their sentencing papers, two separate groups. Now they complain that's not right. Judge Breyer erred when he put them in two separate groups. But that is affirmative waiver under this Court's precedent, because not only did they not raise it in their fourth brief on appeal, at the ab initio, at sentencing, they urged Judge Breyer to make the mistake he made. They urged him to group it separately, which is why he correctly then found double counting. Unless you have questions, I'll reserve as I can. You can reserve. Thank you, Your Honors. Thank you for your argument. Thank you, Your Honor. Good morning. May it please the Court. My name is Philip Kofcinski and I represent the United States. I'll begin if I with the question of the legality of 2423C and specifically the non-commercial aspect of that. The constitutionality thereof? Is that what you're talking about? Yes, Your Honor. Legality? Well, I did because the Court brought up something here that can't just be ignored, which is that strain running through the law about Congress's authority as a sovereign nation to legislate in this area. And it's seen most prominently in the Curtis Wright decision from the 1930s, where the Supreme Court very clearly says the national government has powers independent of the constitution. And that sounds sort of dizzying to people accustomed to focusing on the domestic sphere, because we're taught that in the domestic sphere, the government has limited powers, only those enumerated in the constitution. But the Supreme Court has been quite clear that is not true in foreign affairs. And it explains that if the case were otherwise, then courts would be limiting the nation's sovereign powers, which is something the court should not do. So the question becomes, is imposing a penal law on an American abroad within the powers of a sovereign? And this is where we don't think to be frank, there is an answer directly on point, but all of the available cases seem to suggest the answer is yes. So that's Blackmere and Bowdoin from the 20s and 30s. It's more recently in cases of this court, like King. Cases that talk about the so-called nationality principle. And that arises in the due process framework, but the cases also talk about it more broadly as the principle that Americans owe allegiance to their nation. And that means being subject to the nation's penal laws even when abroad. Can I find it in Clark? Absolutely. Because that's his argument. And Clark in a way first acknowledges this as an independent source of authority, but also I think rightly takes those principles about Congress's power as part of analyzing the Commerce Clause, the Foreign Commerce Clause. Because Clark ends up concluding rightly that Congress's powers in the foreign affairs arena are far broader than domestically. So the court sees words like sweeping and says the Commerce Clause is markedly different in the foreign arena versus domestic. So Clark I think both sides agree should control this case, we just disagree about which way. The government's position is that the Commerce piece in Clark was an additional fact that helped take that case further into the heartland, but it is not a necessary fact. And here it remains true that in the words of Clark there is a rational basis for criminalizing this sort of abuse of minors as it relates to Congress's goal, which is stamping out this national worldwide travesty of child sex tourism. And that frankly gets to do with So do I go as far as they did in the Fourth Circuit in Bollinger? I don't think this court can precisely adopt either Bollinger, the Fourth Circuit, or Pendleton, the Third Circuit, simply because Clark says you are not constrained to the traditional three-part Lopez-Morrison framework. Nevertheless, those cases find that even under that more restrictive three-part framework, it's sufficient. So that's the only distinction. In fact, this court has already said in Clark that the power is even broader, but certainly on that narrower basis the law still stands. And there was a comment from Judge Wallace about the national cases on the Commerce Clause. It's correct that those cases already, of course, interpret the domestic Commerce Clause very broadly. And so Pendleton, Bollinger, the other cases on this issue look to those cases for guidance. They all look to cases that we also cite in our papers from the sex offender registration context. So sex offender registration laws have been upheld nationwide, including by this circuit. So those are domestic applications of the Commerce Clause, where it is simply an individual who travels in commerce one state to another and then fails to register. And courts have said that that is a sufficient basis under the domestic Commerce Clause for Congress to legislate. So it is clear that even domestically, Congress has very broad power. And in the foreign arena, it is only broader than that. And we think, plainly, the non-commercial abuse of children is related to the broader goal here. You will agree, and he's pointed out pretty specifically, that Clark really doesn't get to the issue we have in front of us, correct? True. It just talks about general precepts and concepts that might get us there, but then limited us. So we've got to push it on. So what's our best case to push it on? I'm saying to myself, I've got a 2006 case that didn't do it. Why am I going further? Well, it didn't do it as a matter of judicial restraint. The Court made that very clear. I understand why they didn't do it. Well, I don't understand. I know who wrote it. You could ask her. The Court, as far as it tells us lawyers in its published opinion, says as a matter of judicial restraint, it will not reach that issue. And it is my best precedent to follow if I'm going to write what I'm going to write. I might write out on my own. It might be good to have Judge Wallace here since we're going on our own, but I'm just saying, where do I get my precedent for where you want me to go? In addition, of course, to the out-of-circuit that we think is very persuasive, Pendleton, Bollinger. But you don't want me to go as far as Bollinger. I just heard you say that. Well, I think you can, except, like I say, it's only that this Court has already gone further than Bollinger in Clark. Because in Clark, the Court says, no, the traditional three-part domestic test is too narrow. So if anything, Bollinger is just too restrictive. But it's ultimate finding, of course. And then, like I said a moment ago, I think the Cummings case, that's the international kidnapping statute. We think the analysis there is right on point. It's cited in Clark. It's not as relevant to Clark, given that Clark involves the commercial piece of it. But that's another key precedent that we think fully supports the Foreign Commerce Clause covering this. As time ticks down, I do want to also mention what's merely a footnote in our brief, which is Congress's power under the Constitution to enact legislation pursuant to a valid treaty. This is something that other courts, including the Fourth Circuit and Bollinger, have said that they believe there are prudential reasons that the Court should not reach unless strictly necessary. So we didn't devote much time to it in our brief. I was going to say, I don't think anybody wants us to get there. Well, we do only if the Court thinks it's required. Only if we've got to get there first. Only if you've got to. Okay. I know where he's going. Okay. Go on. What about these other issues he's brought up? Sure. How about the abuse of discretion on not allowing the discovery? Sure. So the text messages, I want to be very clear about how this comes up at trial. So the defendant, his lawyer is crossing the victim's former boyfriend. Or direct. I'm sorry, because it's their witness. During direct, the defendant just starts to say, do you have your cell phone on you today? And he says yes. And maybe one or two more questions, there's an objection, and they go to sidebar. And the district court, Judge Breyer, says, what are you planning to do here? Do you have messages? Are you planning to do messages? And the defense counsel says, yeah, I just learned about this 40 minutes ago. He has messages. And the district court says to him pointedly, is this subject to reciprocal discovery? And the defense counsel gives a non-answer. She says, I just learned about this 40 minutes ago. So she doesn't say, I got copies of the message 40 minutes ago. Maybe not. Now, on appeal, the defense says, well, we don't have, there's nothing in the record that says we even have possession, custody, or control. Well, the district court tried to drill down on that answer and got a non-answer from the defense. Is this hearsay at best? It is. And, Your Honor, that is the far more fundamental reason that this is ultimately nothing. We now know exactly what's in the messages. Because in the context of a Rule 33 motion after trial, the defense got translations of all these things and put them forward and said that the trial is fundamentally unfair because these messages were excluded. But the court rightfully rejected that on a number of basis. Hearsay is one of them. There is no basis to admit these messages. Even if they're authentic and all the other sort of surrounding pieces of admissibility, assuming all that, they're still hearsay. And in the defendant's third cross-appeal brief, what he says is, well, no, 801. They would be prior inconsistent statements. So it's 801. No. No good. But 801 requires, first of all, that the prior statement be under oath. These purport to be messages over Facebook. It would also have to have a different witness on the stand, not the defendant or the victim's boyfriend. So these messages are inadmissible. So no matter what the court thinks of the district court's decision in the moment, it didn't know anything about the messages. Defense counsel had proffered nothing about why they're relevant or admissible or authentic. There was also the Rule 16 issue. But no matter what the court thinks of that decision in the moment at trial, we now see the messages and we see beyond any doubt that they are inadmissible. They're also frankly incomprehensible. We don't think they even passed a relevance test, but... We hear your argument. Do you want to go to the district court, abusing his discretion on declining to apply the obstruction adjustment? Sure. Thank you, Your Honor. I'd like to. So 3C1.1 is very clear. The two levels are added. And we don't think it was air for the PSR to propose grouping here. It is the guidelines contemplate doing it in a more direct way, but it actually doesn't change the result in this case. So the PSR proposed two separate groups. Obstruction counts in one. Sex offense counts in the other. The government didn't object. The defense didn't object. The district court did it that way. The problem came when the district court refused to apply the two-level enhancement to the much higher offense level for the sex offense counts. And so if the court had grouped it, this would all be very obvious, because when grouped the only thing that would matter is... What are you going to say to counsel's argument that you asked for it, you got it, and now you want to object to it? That's just not accurate, and it's not how the guidelines work. Well, I understand how the guidelines work, but what he's saying is, come on, you waived your opportunity here. You're always arguing waiver when you get to me, and I don't put something in the record. You've waived it, or even if you haven't waived it, you asked for the error. You invited it. The error is not applying two levels. And we strenuously told the district court to apply two levels. And the district court did not. That is where we could have waived if we had not raised it, but we did, strenuously, and it went back and forth a little bit with the legislature, I think, for a page or two in the record. And the district court said firmly, no, you're wrong, because you would double count. And we said, Your Honor, respectfully, otherwise it's not counted at all. Yet the court went that way and never applied those two levels. So do I have de novo review here? I think you do, Your Honor. What case would suggest I have de novo review for this? So this issue, I believe, would fall when, and I apologize, I'm trying to remember the name of the en banc case that addresses this on the standard of review. Because if it's just abuse of discretion, I'm not going to get too excited, am I? Especially since you didn't make any argument. You didn't even object. Well, so we did object strenuously below. Again, we very firmly said that the court should apply two levels. Mr. Ballot brought up this other issue of grouping, which didn't change the outcome. It's the same problem whether they're grouped or not. It is the exact same problem. And the problem is not putting two levels into the equation. And I found, it's Gasque-Ruiz, it's the en banc decision of a couple years ago that I think on this issue, although broadly the court's review is for abuse of discretion, I think this would be de novo as an issue of the district court understanding how to apply the correct legal standard. That's 3C1.1. And so we think the Frias case of this papers, a few other cases cited in the papers, make very clear that in these circumstances, 3C1.1 must be applied and the district court didn't do it here. Very good. Your time is gone. Thank you for your argument. Do you have a question? Do you have further questions? No. Thank you. We're back to you, Counselor. You've got a couple of minutes. You can sit right there. No. Yeah. I'm allowing it. Absolutely not, Your Honor. Okay. Whatever. I appreciate the dispensation, but I think these questions, that's not how I roll. Not how I roll. He's trying to get your sympathy out there. Go ahead. You know me better than that too, Your Honor. I'll be brief. I'll try to make one point each regarding my colleague's comments. One, the importance of the Foreign Commerce Clause can't be understated in this case. As this case was charged and as similar cases may be brought, a 21-year-old college student may go to the Philippines, have sex with a 17-year-old, buy her dinner, and be found to have committed a commercial sex act even though his conduct was totally lawful under the laws of the Philippines. But your client was charged in the Philippines. He was charged, and they charged him here instead, and they brought him here for trial instead. But my point is, 100% lawful conduct. But you can't really compare that to something the Philippines will allow. Well, they didn't charge him with a non-commercial clause. They charged him differently. And the government is the master of his complaint, but they charged him with non-commercial sexual conduct abroad, and there's limits to that. And there are important limits to that. And I guess we'll find out what Pepe thinks of it first, but there are important limits to that because having sex with a 17-year-old in the Philippines, if you're a college graduate touring, 15 mandatory minimum, that's extraordinary power, and it requires this Court's close attention. The second piece I would respectfully disagree with my colleague, I don't think Judge Breyer drilled down. I think when Ms. Jane called Rastina to stand, and she started getting into discussions about contradictory statements, he sui sponte excluded them and sui sponte declared a violation without drilling down. When did you get this? He just told me about it before his testimony. What's on it? It's in Tagalog. I don't know. We don't get much more than that, so that proves there's no violation. I also disagree with my colleague. It's impeachment by contradiction. She testified that she was not part of an extortion scheme, and the text showed that she was trying to get Gabriel to participate in an extortion scheme, so it impeached her direct testimony. The last thing I'll say, and I'll thank you for your indulgence, Your Honor, on the 3C1.1 question, the grouping matters. That's why there were two groups, and that's why Judge Breyer believed he would double count. And the government said then, you still have to count them as two groups. So Judge Breyer said, you're the one that's making me double count. The guidelines, and this is this Court's decision in Johnson, we cite in our brief, no double counting. And now they want to tell this Court, well, you shouldn't have double counted. They should have just counted it once, and they grouped them together. They expressly waived their argument by not making it for the first time until the fourth appeal fourth brief on appeal in this case. That's a textbook waiver, textbook invited error. So the Court, at a minimum, should affirm the sentence. I thank the Court. Thank you. Thank you for your argument, both of you. Appreciate it. Case 16-10349 and 10384 cases are submitted.
judges: Wallace, N.R. Smith, Batts